[No. 1854.   Decided November 27, 1895.]

MARY CLEVELAND, *Respondent*, v. ELI S. GLOVER *et ux.*,
*Appellants.*

APPEAL — EQUITABLE ACTION — REVIEW OF FINDINGS OF FACT.

The findings of fact made in an equitable action, which have
been duly excepted to, must, on appeal, be examined in the light of
the evidence.

Appeal from Superior Court, Pierce County.—Hon.
JOHN C. STALLCUP, Judge.   Reversed.

*Snell & Bedford,* for appellants.

*Parsons, Corell & Parsons,* and *Whalley, Strahan &
Pipes,* for respondent.

The opinion of the court was delivered by

HOYT, C. J.—The controversy in this action involved
the title to certain tracts of land situated in the city of
Tacoma.   Many important propositions have been pre-
sented in the briefs of counsel and elaborately argued.
These were founded upon questions relating to the
place of residence of the plaintiff and her husband at
the time he acquired the paper title to the lands and to
the legal results flowing from such residence.   The con-
clusion to which we have come as to the facts relating
to the acquisition of the property will make it un-
necessary for us to consider any of these questions.
The plaintiff founds her claim to the lands upon the
alleged fact that they were purchased by her husband
after their marriage with his own money, and upon
such purchase became the property of the community
composed of her husband and herself.   The claim of
the appellants is founded upon the alleged fact that at

the time the lands were purchased by the husband of
the plaintiff he was acting as the agent of the appel-
lant, Eli S. Glover; that the lands were paid for with
his money, and the paper title thereto wrongfully
taken in the name of the agent instead of in that of
the principal. Various other collateral questions of
fact were presented by the pleadings and proofs, but
the entire merits of the controversy must depend
upon which of the claims above referred to is shown
by the proofs to have been warranted. It is therefore
unnecessary for us to consider any other question than
the one of fact presented by these adverse claims.

The trial court found the facts to be as claimed by
the plaintiff, and the question which we are called
upon to decide is as to the sufficiency of the proofs to
sustain this finding. The suit was in equity, and the
findings of fact having been duly excepted to, must
be here examined in the light of the evidence. *Roberts
v. Washington National Bank*, 11 Wash. 550 (40 Pac.
225).

When a pure question of fact is to be determined
by an appellate court there is little use of any discus-
sion of the reasons upon which its decision is founded.
However elaborate might be the discussion of such a
question, it would have little value to the legal pro-
fession or to the general public, for the reason that
the facts of each case must be determined in the light
of all the circumstances disclosed by the proofs. And
such circumstances are never all the same in any two
cases. Hence, we shall not attempt at any great length
to give reasons for our conclusion upon the question
of fact above suggested.

The claim of the plaintiff was supported only by
the testimony of her husband and the deed in
which the title was conveyed to him; the other by the

direct testimony of the appellant Eli S. Glover and by
proof of admissions, oral and written, of the husband
of the plaintiff. The support to which the plaintiff's
claim was entitled by reason of the paper title having
been taken in the name of her husband was fully
overcome by the fact that by the action of her hus-
band as well as herself such paper title had been, be-
fore the commencement of the action, fully vested in
the appellants. The question of fact must largely de-
pend upon the credit to be given respectively to the
testimony of the husband of the plaintiff and that of
the appellant, Eli S. Glover. There is nothing so in-
herently improbable in the version of either of these
as to the transaction that their testimony would be
much affected thereby, and if there was nothing in
the surrounding circumstances, or in admissions or
statements made by them, going to affect the credi-
bility of their testimony, the evidence of one would
practically balance that of the other, and there would
be no such preponderance of evidence against the find-
ings of the trial court as would authorize us to inter-
fere. But when witnesses thus contradict each other,
it is the duty of the court to investigate all the col-
lateral facts which have any bearing upon the truth
of either story. Such investigation compels us to
come to a different conclusion from that arrived at by
the trial court. The only circumstance which had
any tendency to throw discredit upon the testimony·
of said appellant grew out of the alleged fact that he
had on several occasions assisted the husband of the
plaintiff in concealing his whereabouts from his wife.
We are not satisfied from the proof that he took any
affirmative action in this direction, but, even if he
did, that fact alone would not much affect his credit
as a witness. It clearly appeared from the proofs

that at these times the husband was anxious to conceal his whereabouts from his wife, that he relied upon the appellant as a friend, and made known to him his desire in that regard. It further appeared that he stated to him the reasons why he did not want his wife to find him. Under these circumstances it was but natural that the appellant should be willing to comply with the request of his friend to do nothing to aid the wife in ascertaining his whereabouts.

It is true that the plaintiff claims that the reason why her husband desired to have his whereabouts concealed from her grew out of a state of mind induced by the influence of the appellants, but, after a careful examination of the entire record, we are unable to find a single fact to have been established which furnished any foundation for this claim. The testimony of the appellant, Eli S. Glover, was therefore undisputed by anything in the record excepting the testimony of the husband of the plaintiff. That of the husband of plaintiff was discredited by numerous circumstances fully established by the proofs. There were the recitals in the instrument executed by him in Chicago. These were entirely inconsistent with the testimony given by him upon the trial, and the only explanation which he attempted to give for having executed an instrument with such recitals was the alleged fact that he relied entirely upon the appellant, Eli S. Glover, and was willing to do anything that he asked, but this explanation was entirely inadequate in view of the fact that, if his story, as detailed in his testimony was true, there was absolutely no reason why the thought of the execution of a paper with such recitals should have occurred either to said appellant or to him. Hence these recitals must be given force in determining the weight

of his testimony. The further fact appeared that there was no adequate explanation of the execution of the deed to appellant Sarah P. Glover, years after the execution of the instrument containing the recitals above referred to. His testimony was so affected by recitals in instruments solemnly executed by him that the only theory upon which it could be sustained would be that of his having been so fully under the control of the appellant Eli S. Glover, that he was not responsible for acts done at his request or in his presence. It was probably this view of the relation of these parties that induced the finding made by the superior court, and if there was any evidence in the record which had any legitimate tendency to show such to have been their relations, we might come to the same conclusion, but we have been unable to discover anything which tended to show that said appellant had any such control over the husband of the plaintiff that he was not at all times fully responsible for what he did. Besides the admissions in these written instruments, numerous oral ones of a like tendency were testified to by both of the appellants, and their testimony was in many respects confirmed by that of disinterested witnesses. All of these circumstances tended strongly to contradict the testimony of the husband of the plaintiff and just as strongly to confirm that of appellants. In this light the testimony of the husband of the plaintiff must be held to have been overcome by that of appellants.

In our opinion the equitable title to this property was, from the time of its purchase by the husband of the plaintiff until it was conveyed to the appellant or his wife, in the appellants, and the plaintiff never had any interest therein.

The judgment will be reversed and the cause remanded with instructions to dismiss the action.

SCOTT, ANDERS and DUNBAR, JJ., concur.

GORDON, J. (*dissenting*).· I agree with the majority that the question presented by the record is a simple question of fact. I also accept the statement in the opinion of the majority that " the question of fact must largely depend upon the credit to be given respectively to the testimony of the husband of the plaintiff and that of the appellant." Such being the character of the question and the rule upon which its determination must depend, I am unwilling to disturb the finding of the lower court in this case. That court had many circumstances of advantage to enable it to determine what witnesses were entitled to credit, and to give credit accordingly. The appearance of a witness while testifying, his demeanor, candor and intelligence, the tone of his voice, the look or gesture, are all circumstances which assist the experienced trial judge in reaching a conclusion, and in themselves constitute evidence of the most convincing character, and yet it is not possible to incorporate it in the record upon appeal.

For this and kindred reasons, the rule has long been settled elsewhere that an appellate tribunal will not disturb the findings of a lower court where there is a substantial conflict in the evidence and where it does not clearly appear that injustice has been done. Nor do I think that the statute of this state governing appeals of this character requires the adoption of a different rule. Like any other statute it should receive a reasonable construction and be interpreted in the light of the general rule prevailing elsewhere. I cannot believe that the legislature intended to put the

burden upon this court of determining from the record alone which of two witnesses, whose testimony is in direct conflict, told the truth. That is the province of the lower court, which sees the witnesses.

With deference to my brethren, I am constrained to dissent from their conclusion, and think that the decree appealed from should be affirmed.